IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

| | | |
|---|---|---|
| DEVELOPERS SURETY AND INDEMNITY COMPANY, | ) ) ) | 2:17-CV-01360-MJH |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| CHRISELLIE CORP., VICTOR J. VELTRI, AS GENERAL PARTNER OF MV HOLDINGS AND ON HIS OWN BEHALF; ELOISE M. VELTRI, MICHAEL E. CRUNY, CHRISTINE A. CRUNY, | ) ) ) ) | |
| Defendants, | | |

## OPINION

Plaintiff, Developers Surety and Indemnity Company, (Developers) has brought a breach of contract, unjust enrichment, and indemnification action against Defendants based upon their failure to fulfill obligations under two indemnity agreements.

Developers moves for Summary Judgment seeking judgment as a matter of law against all Defendants. (ECF No. 77). Defendants, Victor J. Veltri as General Partner of MV Holdings, Victor J. Veltri, and Eloise M. Veltri (Veltris), move for Summary Judgment seeking judgment in their favor on Developers' claims. (ECF No. 79). The Veltris also move for Summary Judgment seeking judgment on their crossclaim against Defendants, Michael E. Cruny and Christine A. Cruny. (ECF No. 81). The parties provided briefs, supporting exhibits, and oral argument. (ECF Nos. 78, 80, 82-87, 89-91). The matter is now ripe for decision.

For the following reasons, Developers' Motion for Summary will be granted as to Counts I and II; Developers' Motion for Summary Judgment for reasonable attorneys' fees will be denied, without prejudice; Veltris' Motion for Summary Judgment against Developers' will be

denied; and Veltris' Motion for Summary Judgment on their Crossclaim against the Crunys' will be granted in part and denied in part.

I.      Background

Developers issues surety bonds at the request of and on behalf of contractors. (ECF No. 35 at ¶ 13).  The Veltri and Cruny defendants are/were principals of corporate general contractors and subcontractors engaged in construction activities, which included privately funded and publicly funded projects, within the Commonwealth of Pennsylvania and elsewhere. *Id*. at ¶ 14.   The Defendant entities, who were entering the construction contracts, were required to secure certain types of surety bonds for the benefit of named obligees to ensure the Defendant entities' completion of the aforementioned projects and/or payment of certain subcontractors.  *Id*. at ¶ 15.  The Defendant entities applied for surety credit from Developers and requested Developers to issue certain surety bonds for various projects.  (ECF No. 35 at ¶ 18).  On February 26, 2009, the Defendant entities and the Veltris and Crunys entered into an indemnity agreement with Developers (2009 Agreement).  *Id*. at ¶ 16 and ECF No. 77-2.  On June 7, 2011, corporate entities, including MV Holdings, through Victor J. Veltri as general partner, and the Crunys entered into an indemnity agreement with Developers (2011 Agreement).  (ECF No. 35 at ¶ 17 and ECF No. 77-3).  The two agreements were identical in their terms; however, the 2011 Agreement added Superior Sheet Metal Fabricators, Inc. as a party, and it excluded Victor and Eloise Veltri as parties.   (ECF NO. 77-3 at p. 10)  Each Agreement bound the indemnitors to continuing obligations to Developers in conjunction with any surety bond provided by Developers.  *Id*. at ¶ 19.  The 2009 and 2011 Indemnity Agreements bound the respective Defendants, jointly and severally, to reimburse Developers for all premiums and losses that

Developers sustained. *Id*. at ¶ 20.  Paragraphs 1 and 2 of each Indemnity Agreement state in

relevant part:

1. INDEMNIFICATION In consideration of the execution and delivery by Surety of Bond or any Bonds on behalf of Principal, Principal and Indemnitor shall pay all premiums charged by Surety in connection with any Bond (including extensions, renewals or modifications) issued by Surety on behalf of Principal and shall indemnify and hold harmless Surety from and against any and all liability, loss, claims, demands, costs, damages, attorneys' fees and expenses of whatever kind or nature, together with interest thereon at the maximum rate allowed by law, which Surety may sustain or incur by reason of or in consequence of the execution and delivery by Surety of any Bond on behalf of Principal whether or not Surety shall have paid any amount on account thereof, including without limitation, the following:

   \*\*\*

   1.2  Liability incurred or amounts paid in satisfaction or settlement of any or all claims, demands, damages, costs, losses, suits, proceedings or judgments relating to Principal's nonperformance of an Obligation or any other matter covered by a Bond.

   1.3  Liability incurred or expenses paid in connection with claims, suits or judgments relating to an Obligation or a Bond, including. without limitation, attorneys' fees and all legal expenses, and all fees and costs for investigation, accounting, or engineering services related to the adjustment of claims and losses.

   1.4  Liability incurred or expenses paid in procuring or attempting to procure a release of liability under or exoneration of a Bond.

   \*\*\*

2. EXERCISE OF RIGHTS BY SURETY. In connection with the exercise of any of Surety's rights under this Agreement

   2.1 Surety shall have the right in its sole and absolute discretion to determine whether any claims under a Bond shall be paid, compromised, defended, prosecuted or appealed.

   \*\*\*

   2.4 In any claim or suit hereunder, an itemized statement of claims or losses paid or liabilities incurred and expenses paid or incurred, declared under penalty of perjury to be true and correct by an officer of Surety, or the vouchers or other

3

evidence of disbursement by Surety, shall be prima facie evidence of the fact and extent of liability hereunder of Principal and Indemnitor.

2.5 Surety shall have the right to reimbursement of its expenses and attorneys' fees incurred hereunder, irrespective of whether any Bond loss payment has been made by Surety. In any suit on this Agreement, Surety may recover its further  expenses and reasonable attorneys' fees incurred in such suit.

(ECF No. 35 at  ¶ 21; ECF No. 77-2 and 77-3 at  ¶¶ 1-2).   At the request of the

Defendants, Developers issued surety bonds on eight (8) projects.  (ECF No. 35 at ¶ 22).

On September 25, 2009, Ms. Veltri sold her interests in Iron City[1] to Ms. Cruny.  (ECF

No. 38 at ¶ 6).   Ms. Veltri and Ms. Cruny memorialized the sale through a Stock Purchase

Agreement (SPA).  *Id*.

The Stock Purchase Agreement states in relevant part:

**4.2 Indemnification Provisions for [Eloise Veltri's] Benefit.** From and after the Closing Date, [Christine Cruny]will indemnify and hold [Eloise Veltri and her husband, Victor Veltri] harmless (and with respect to <u>Section 4.2(c)</u> and <u>Section 4.2(d)</u> the [Iron City Constructors, Inc.] will indemnify and hold[Eloise Veltri and her husband, Victor Veltri] harmless) from and pay any and all Damages (except for consequential, special or incidental Damages) to which the [Eloise Veltri and her husband, Victor Veltri] become subject as a result of, arising out of or attributable to, any one of the following:

***

(d)     Any personal guarantees that [Eloise Veltri] and/or her husband, Victor  Veltri,  issued in order to allow the Company to obtain credit from a third party.

(ECF No. 38-1 at § 4.2).   Michael Cruny, as president of Iron City Constructors, Inc.[2] signed the

SPA in relation to Sections 4.2(c) and 4.2(d) only.  *Id*. at p. 13.

---

[1] The Veltris allege that Ms. Veltri also sold her interests in Chrisellie, but the Veltris neither reference nor attach any sales agreement regarding the same.  Any agreement regarding said sale or terms of said sale are not at issue in this case.

[2] Iron City Constructors, Inc. was dismissed by Order of Court (ECF No. 33); and therefore, it is not a party to this Motion for Summary Judgment.

Between March 19, 2010, and August 30, 2011, the Defendants allegedly defaulted on their obligations. *Id*. at ¶¶ 23-123. As a result, Developers sustained out-of-pocket net losses in the amount of One-Million Nine Hundred Fifty-Three Thousand Three Hundred Seventy-Two and 97/100 Dollars, ($1,953,372.97), excluding any recoverable attorney's fees, as determined to be due pursuant to the terms of the written indemnity agreements. *Id*. at ¶ 125. Pursuant to the prima facie clauses of the Agreements (Paragraph 2.4), Jef Graham, an officer of Developers, submitted a declaration including an itemized statement of claims and the losses disbursed. (ECF Nos. 77-4 and 77-5). Developers have made demands for payments, and Defendants have not paid upon said demands.

II.     Standard of Review

Summary judgment may only be granted where the moving party shows that there is no genuine dispute about any material fact, and that judgment as a matter of law is warranted. Fed. R. Civ. P. 56(a). Pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against a party who fails to make a showing sufficient to establish an element essential to his or her case, and on which he or she will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In evaluating the evidence, the court must interpret the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in his or her favor. *Watson v. Abington Twp.*, 478 F.3d 144, 147 (3d Cir. 2007).

In ruling on a motion for summary judgment, the court's function is not to weigh the evidence, make credibility determinations, or determine the truth of the matter; rather, its function is to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000) (citing decisions); *Anderson v. Liberty Lobby*, 477 U.S. 242, 248–49 (1986);

*Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 643 n. 3 (3d Cir. 1998).  The mere existence of a factual dispute, however, will not necessarily defeat a motion for summary judgment.  Only a dispute over a material fact—that is, a fact that would affect the outcome of the suit under the governing substantive law—will preclude the entry of summary judgment.  *Liberty Lobby*, 477 U.S. at 248.

   III.    Discussion

           A. Developers' Motion for Summary Judgment and the Veltris' Motion for Summary Judgement

Developers seeks judgment against all remaining Defendants, Chrisellie Corp., Michael Veltri, as General Partner of MV Holdings, and the Crunys on both the 2009 and 2011 Agreements (Counts I and II).   Developers also seeks judgment against Michael Veltri and Eloise Veltri, individually, on the 2009 Agreement (Count I).  Both Counts I and II are for breaches of surety and indemnity contracts.  Developers also filed for summary judgment as regards its Count III, Unjust Enrichment claim. The Veltri Defendants and Cruny Defendants responded to Developers' Motion for Summary Judgment. Chrisellie did not respond to Developers' Motion.

The Veltris filed their Motion for Summary Judgment seeking judgment against Developers as to Counts I, II, and III.  Developers filed a response to said motion.  Said Motion essentially raises the same issues and arguments as are presented in the Veltri and Cruny Responses to Developers' Motion for Summary Judgment.  Accordingly, Developers' Motion for Summary Judgment and Veltris' Motion for Summary Judgment will be addressed in seriatim.

As regards Developers' Count III claim for unjust enrichment,  in its response to Veltris' Motion for Summary Judgment, Developers stipulated to the dismissal of Count III. As such,

Developers' Unjust Enrichment claim will be dismissed. Thus, the Veltris' Motion for Summary Judgment, concerning Count III, is moot.

In their response to Developers' Motion for Summary Judgment, the Veltris argue that there are questions of material fact, and they incorporate their own Motion for Summary Judgment. (ECF No. 81). The Veltris challenge Developers' claims and seek summary judgment against Developers. The Veltris argue that the 2009 and 2011 Agreements are invalid and unenforceable because of indefinite terms, lack of consideration, and novation. They also assert a statute of limitations affirmative defense as to claims arising before October 19, 2013. They further argue that Developers breached its duties under the Agreements through lack of notice and/or non-compliance with the underlying bonds or subcontracts, and because Developers has not proven breach of the construction contracts and subcontracts. Finally, the Veltris argue that Developers does not sufficiently prove its damages, and they assert the defense of bad faith. The Crunys' response to Developers' Motion for Summary Judgment incorporates the Veltris' arguments, restates the statute of limitations defense, and challenges damages by arguing that there are questions of material fact.

For a Breach of Contract claim, Developers "must establish: (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages." *McCausland v. Wagner*, 78 A.3d 1093, 1101 (Pa.Super.Ct.2013). "In order to form a contract, there must be an offer, acceptance, and consideration or a mutual meeting of the minds." *Ribarchak v. Mun. Auth. of City of Monongahela*, 44 A.3d 706, 708 (Pa. Commw.Ct.), appeal denied, 618 Pa. 692, 57 A.3d 73 (Pa. 2012).

With regard to indemnity and surety contracts, at common law, equity generally implies a right to indemnification in favor of a surety only when the surety pays off a debt for which its

principal is liable. *Fidelity & Deposit Co. of Maryland v. Bristol Steel & Iron Works, Inc.*, 722 F.2d 1160, 1163 (4th Cir.1983) (applying Pennsylvania law) (citing *Com'l Ins. Co. of Newark v. Pacific–Peru Constr.*, 558 F.2d 948, 953 (9th Cir.1977)). However, implied indemnity principles are improper when an express indemnification contract exists. When there is such an express contract, a surety is entitled to stand upon the letter of the contract. *U.S. Fid. & Guar. Co. v. Feibus*, 15 F. Supp. 2d 579, 583 (M.D. Pa. 1998), aff'd, 185 F.3d 864 (3d Cir. 1999) (citations omitted). Sureties enjoy considerable discretion in settling claims "because of the important function they serve in the construction industry," and that in light of this, other courts "have [ ] upheld a surety's right to indemnification for claims paid to protect its own interests, as long as the payments were made in good faith." *Id*. at 585–86.   Presently, Developers relies on its express contract for indemnification.

Developers seeks to enforce the 2009 and 2011 Agreements against the Defendants.   The Veltris, as joined by the Crunys, question the validity and enforceability of the Agreements based upon indefiniteness and lack of consideration, and they argue that the 2011 Agreement was a novation of the 2009 Agreement.[3]

As regards indefiniteness, the Veltris contend that neither Agreement identifies any of the eight bonds issued nor defines how the Agreements apply to each bond.  Further, the Veltris maintain that Ms. Veltri, who only executed the 2009 Agreement, cannot be liable for damages for any bond not identified specifically in the 2009 Agreement.  Developers argues that each Agreement covers all bonds issued before or after the execution of each Agreement and that each Agreement is fully enforceable.

---

[3] Discussion of the Veltris' arguments also includes Crunys' joinder in said arguments as noted in Crunys' Response.  (ECF No. 85).

"[I]n order for there to be an enforceable contract, the nature and extent of its obligation must be certain; the parties themselves must agree upon the material and necessary details of the bargain." *Lombardo v. Gasparini Excavating Co.*, 385 Pa. 388, 123 A.2d 663, 666 (1956). In other words, the Court examines whether "the terms are sufficiently definite to be specifically enforced." *Channel Home Ctrs. v. Grossman*, 795 F.2d 291, 298–99 (3d Cir.1986). Whether the terms are sufficiently definite is a question of law. *Id*. at 300 (finding terms to be sufficiently definite to warrant enforcement of the contract).

The pertinent language of each of the 2009 and 2011 Agreements covers bonds issued before and after the dates of execution. Each Agreement states that "[t]his Indemnity Agreement ("Agreement") is made as of the Execution Date set forth above by Principal and Indemnitor[4] for the purpose of indemnifying [Developers] in connection with the Bond(s) described above." (ECF No. 77-2 at p. 3 and 77-3 at p. 3).   Each Agreement defines Bonds as "Any contract of suretyship . . . undertaken by [Developers] for Principal, **whether before or after the date of this Agreement** (excluding, however, any bond(s) which is/are specifically within the scope of another indemnity agreement.)"  *Id*. (Emphasis added).  Each Agreement also indicates that it is intended to apply to multiple bonds.  The language of the 2009 and 2011 Agreements contemplate bonds to be undertaken either before or after the date of each respective Agreement. Paragraph 14.18 of each Agreement indicates that the obligations in the Agreement are "in addition to and shall not limit or in any way affect the obligations of Principal and/or Indemnitor

---

[4] The 2009 Agreement lists as Principals, Iron City Constructors, Inc. and Chrisellie Corp.  The 2011 Agreement lists as Principals, Iron City Constructors and Superior Sheet Metal Fabricators, Inc. (ECF Nos. 77-2 at p. 3 and 77-3 at p. 3). Under each of the 2009 and 2011 Agreements, Indemnitors are the parties who have executed the respective Agreement. *Id*.  All of the Defendants executed the 2009 Agreement as either a Principal or Indemnitor.   (ECF No. 77-2 at p. 10).   All of the Defendants, except Eloise Veltri and Michael Veltri individually, signed the 2011 Agreement as either a Principal or Indemnitor.  (ECF No. 77-3 at p. 10).

under any other existing or future indemnities or guarantees unless said indemnities or guarantees are expressly modified or revoked in writing."  (ECF Nos. 77-2 at p. 9 and 77-3 at p. 9). Paragraph 13.2 describes steps required by any Indemnitor to terminate liability for any "future Bond." (ECF Nos. 77-2 at p. 8 and 77-3 at p. 8). Further, neither Agreement requires that any bonds be specifically identified within said Agreement. Therefore, each Agreement is sufficiently definite and enforceable.

The Veltris also contend that Ms. Veltri cannot be liable for Developers' claims because she only executed the 2009 Agreement. Developers contends that the Agreements contemplated the possibility for the existence of multiple indemnity agreements and future bond issues, such that each Agreement applies to impose liability.  Developers asserts that its rights under both Agreements are cumulative.  As discussed above, the obligations established by the 2009 Agreement were ongoing unless modified or terminated as provided within the Agreement.  The fact that Ms. Veltri did not sign the 2011 Agreement is not relevant to her ongoing liability under the 2009 Agreement.  The Veltris offer no evidence that Mr. or Ms. Veltri or any other party to the 2009 Agreement ever implemented the steps outlined within the 2009 Agreement to modify or revoke their obligations under that Agreement.  Thus, the terms of the 2009 and 2011 Agreements are sufficiently definite and enforceable regarding Developers' claims against all Defendants in this case.

The Veltris next argue that the 2009 and 2011 Agreements are unenforceable against the Veltris because neither received consideration in exchange for their alleged promise to indemnify Developers. Developers contends that the 2009 and 2011 Agreements each provided adequate consideration.

"It is axiomatic that consideration is 'an essential element of an enforceable contract.'" Crown *Coal & Coke Co. v. Powhatan Mid-Vol Coal Sales*, LLC, 929 F. Supp. 2d 460, 469 (W.D. Pa. 2013) (quoting *Penn Supply, Inc. v. Am. Ash Recycling Corp. of Pa.*, 895 A.2d 595, 600 (Pa. Super. 2006)). Presently, the language of each Agreement specifically addressed the element of consideration. Paragraph 14.3 of each Agreement states, in pertinent part: "Indemnitor acknowledges that Indemnitor's undertaking given hereunder is given in consideration of the execution or issuance of any Bond coming within the scope of this Agreement, and the Surety would not execute or issue any such Bond were it not for the execution and delivery of this Agreement by Indemnitor." (ECF No. 77-2 at ¶ 14.3 and ECF No. 77-3 at 14.3).  Therefore, the Bonds issued on behalf of the Principals, of which the Veltris were owners and/or shareholders as of September 25, 2009, establish that the Veltris received benefit and therefore consideration from Developers as a result of the Agreements. As such, Developers have established consideration for the 2009 and 2011 Agreements.

Next, the Veltris assert the defense of novation against enforcement of the 2009 Agreement.  They argue that the 2011 Agreement superseded the 2009 Agreement, because the 2011 Agreement was a novation of the 2009 Agreement. The Veltris note that the only material changes in the 2011 Agreements were the addition of Superior Sheet Metals as a Principal and Indemnitor and the absence of the individual Veltris as Indemnitors.  The Veltris contend that, where all parties to the 2009 Agreement, except for the Veltris, executed the 2011 Agreement, the 2011 contracting parties clearly intended for the 2011 Agreement to supersede the 2009 Agreement. The Veltris also contend that Developers demonstrated an intent to discharge the 2009 Agreement because in a letter dated May 8, 2012,  Chrisellie and the Indmenitors to the 2011 Agreement acknowledged breach of said agreement. (ECF No. 80-3 at p. 329-330).

11

Developers counters that there is no evidence to support any finding of such intent as of the date

of the 2011 Agreement or that the 2011 Agreement was intended as a novation for the 2009

Agreement.   Further, Developers notes that Paragraph 14.17 of each Agreement specifically

states:

> By exercising or failing to exercise any of its rights, options or elections
> hereunder, Surety shall not be deemed to have waived any breach or default on
> the part of either Principal or Indemnitor or to have released either Principal or
> Indemnitor from any of their obligations hereunder, unless such waiver or release
> is in writing and is signed by Surety. In addition, the waiver by Surety of any
> breach or default hereunder shall not be deemed to constitute a waiver of any
> succeeding or preexisting breach or default.

(ECF No. 77-2 and 77-3 at ¶ 14.17).

The doctrine of novation, or substituted contract, applies where: (1) a prior contract has

been displaced; (2) a new valid contract has been substituted in its place; (3) there exists

sufficient legal consideration for the new contract; and (4) the parties consented to the extinction

of the old contract. *Buttonwood Farms, Inc. v. Carson*, 478 A.2d 484, 486 (Pa. Super. 1984).

"The party asserting a novation or substituted contract has the burden of proving that the parties

intended to discharge the earlier contract." *Id.* Such intention "may be shown by other writings,

or by words, or by conduct or by all three." *Id.* at 487.

As regards any writings to support a novation, there is no language within the 2011

Agreement that references any novation or modification or termination of the 2009 Agreement.

The terms of the 2011 Agreement are identical to the 2009 Agreement. Thus, the language of

2011 Agreement does not support novation. Further, each Agreement clearly defines the steps

that must be taken in order for an Indemnitor to terminate his or her responsibility under each

Agreement. (Doc. 77-2 at ¶ 13 and 77-3 at ¶ 13).  Paragraph 13 of the Agreement requires that

termination by written notice must be given to Developers.  *Id*.  There is no evidence that any of

the parties ever gave any notice to modify or terminate liabilities created by the 2009 Agreement. Finally, the defense has not presented any evidence of any communications, written or oral, to support that Developers agreed to any novation in the 2011 Agreement. The Veltris' contention, that the May 8, 2012 letter to Developers forecloses any rights under the 2009 Agreement fails because the Veltris have produced no writing by Developers that states any intent that Developers waived its rights under the 2009 Agreement. Thus, the conduct of the parties does not support a novation. The Veltris' argument, that the parties intended for the 2011 Agreement to displace the 2009 Agreement, is unavailing. Further, the defense provides no evidence that Developers received any consideration in exchange for the purported novation. Therefore, there is no question of material fact as to the defense of novation to discharge the 2009 Agreement. The Defense has not met its burden. Developers have established valid contract claims at Counts I and II.

Next, the Veltris and Crunys argue that the statute of limitations bars Developers' claim for any alleged damages incurred before October 19, 2013. Developers alleges that the Defendants breached the 2009 and 2011 Agreements by refusing to reimburse Developers for payments it made pursuant to the bonds between March 19, 2012 and May 20, 2015. Developers filed the instant action on October 19, 2017. The Veltris and Crunys therefore argue that the four-year statute of limitations bars Developers' claims for damages incurred before October 19, 2013. Developers argues that each of the 2009 and 2011 Agreements expressly waived any statute of limitations defense.

Waiver of the defense of the statute of limitations in an indemnity agreement is enforceable. *Lehman Bros. Holdings v. Gateway Funding Diversified Mortg. Servs.*, 942 F. Supp. 2d 516, 531 (E.D. Pa. 2013). The Pennsylvania Supreme Court has endorsed parties'

authority to modify limitations periods: "It is true, of course, that parties to a lawsuit or a potential lawsuit may modify the statutory period of limitation." *Ins. Co. of N. Am. v. Carnahan*, 446 Pa. 48, 284 A.2d 728, 729 (1971). Federal Courts have repeatedly recognized the same. *Ocwen Loan Servicing, LLC v. Radian Guar., Inc.*, 2018 U.S. Dist. LEXIS 16013, p. 51, fn. #147 (E.D. Pa 2018); see also, *N. Am. Elite Ins. Co. v. Victory Fire Prot., Inc.*, 2018 U.S. Dist. LEXIS 144157: (E.D. Pa. 2018); *Quinn v. Wilmington Trust Co.*, 1992 U.S. Dist. LEXIS 19225 (E.D. Pa. 1992); *Glover v. Darway Elder Care Rehab. Ctr.*, 2014 U.S. Dist. LEXIS 31379- (M.D. Pa. 2014).

Paragraph 8.4 of each Indemnity Agreement states:

8. Waivers. The Principal and Indemnitor hereby waive and agree not to assert:

8.4    The defense of Statute of Limitations in any action hereunder or for the collection of any claim or for the performance of any obligation indemnified hereby.

(ECF No. 77-2 at ¶ 8.4 and ECF NO. 77-3 at ¶ 8.4). Here, the parties agreed to waive any statute of limitations defense and said contractual waiver is enforceable.  Therefore, neither of Developers breach of contract claims is barred by the four-year statute of limitations.

The Veltris also argue that the statute of limitations waiver in each Agreement is unconscionable and may not be enforced. (ECF No.  80 at p. 19).  The Veltris did not raise the defense of unconscionability in their Answer. (ECF No. 38).  Only after the Veltris argued said defense in their Motion for Summary Judgment and after Developers filed its response arguing waiver of said defense, did the Veltris request leave to amend their answer to plead said defense (ECF No. 92).  Unconscionability of an indemnity agreement is an affirmative defense that must be pleaded and proved by the defendant. *Am. S. Ins. Co. v. Halbert*, 203 A.3d 223, 228 (Pa. Super. 2019); *Denlinger, Inc. v. Dendler*, 608 A.2d 1061, 1067 (Pa. Super 1992); *see also,*

14

*Fredricks v. Hamm*, 45 D. & C.2d 687, 690 (1968) (unconscionability is an affirmative defense which must be pleaded). Because the Veltris did not timely plead an affirmative defense of unconscionability and because extensive discovery was completed and discovery was closed, and because motions for summary judgment were filed and fully briefed before Veltris filed their motion for leave to amend, this Court did not permit amendment.  (ECF No. 94). As such, the Veltris have waived said defense.

However, even if said defense had been properly and timely pleaded, or if it had not been contractually waived, record evidence does not establish such affirmative defense.  In their briefing, the Veltris contend that Paragraph 8.4 of each Agreement is an adhesion clause that is unconscionable and unenforceable.   Developers argues that the Veltris were sophisticated and commercial parties.   Given the commercial nature and experience of all parties, the Veltris' contention lacks merit.

To establish unconscionability of a contract, the Veltris would need to prove that the Agreements were: 1) contracts of adhesion, e.g. that the Veltris were in a weaker position, typically a consumer; 2) the adhesion contract was unconscionable because they lacked a meaningful choice in accepting the Agreement; and, 3) the terms unreasonably favored the Plaintiff.  *Am. S. Ins. Co. v. Halbert*, 203 A.3d 223, 228 (Pa. Super. 2019).  As one court observed, "the parties to a surety contract are typically commercially sophisticated, have relatively equal bargaining power and ample access to legal and technical advice."  *Reginella Const. Co. v. Travelers Cas. & Sur. Co. of Am.*, 949 F. Supp. 2d 599, 612 (W.D. Pa. 2013).

Here, the Veltris cannot maintain that they were in a weaker position to Developers as they were commercially sophisticated parties to the surety contract.   Mr. Veltri testified that he had been in the construction business for 45 years.  (ECF No. 83-3 at p. 3). Also, testimony from

the surety broker, who coordinated the 2009 and 2011 Agreements, indicated that these transactions require extensive financial screening before parties are matched with bonding companies.  (ECF No. 80-8 at pp. 10, 21).  The surety broker, Mr. Jeffe, indicated that his firm works with 25 other bonding companies.  *Id*. at p. 10.  The Veltris could have chosen another surety company if they did not want to agree to Paragraph 8.4.   The Veltris have not established that they did not have meaningful choices in regards to the waiver of the statute of limitations.  Further, all parties to the Agreements assumed duties and received benefits from the Agreements.  The evidence does not support that the terms of the Agreements unreasonably favored Developers.  As such, the record does not establish the defense of unconscionability.  Thus, had the Veltris not waived the unconscionability defense, their assertion of said defense would not prevail on the merits.  For all the above reasons, the defense of the statute of limitations fails, and the Veltris' Motion for Summary Judgment asserting said defense will be denied.

The Veltris next argue that Developers cannot recover for breach of the Agreements because Developers failed to provide the Veltris with any notice of any claims against the bonds.  Developers provided the required notice to the Principals.  (ECF No. 80-3 at p. 26). Developers contends that neither the 2009 nor the 2011 Agreement required Developers to provide the Veltris, as Indemnitors, with direct notice of any claims asserted against the bonds.

With regards to notice, the 2009 and 2011 Agreements provide as follows:

> [Developers] agrees to make a reasonable effort to give Principal and Indemnitors notice of any material information of which [Developers] has knowledge concerning or affecting the rights or liability under any Bond or any rights and liabilities hereunder. **Such notice shall be given at the last address known to [Developers] for Principal. Further, the failure to give such notice in no way relieve Principal and Indemnitors, or any of them, of any liability, duty or obligation hereunder.**

(ECF Nos. 77-2 at ¶ 10 and Doc. 77-3 at ¶ 10) (emphasis added).  The Veltris also argue the defense that this provision is unconscionable.  For the reasons outlined above, said defense of unconscionability fails. This provision required notice to be given to the address of the Principals. Developers gave such notice to Iron City Constructors' address with attention to Victor and Eloise Veltri.  (ECF No. 80-3 at p. 26).  Developers was required to provide a reasonable effort to give notice. The Veltris, as Indemnitors, were not entitled to separate individual or direct notice. The mailed notice to the Principal complied with the Agreements' notification requirement.  Further, even if Developers had failed to comply with notice provisions of the Agreements, each Agreement explicitly states that liability, duties, and obligations would not be relieved.  Thus, the argument concerning lack of notice fails.

The Veltris also argue that Developers' breach of contract claims require Developers to prove its compliance with the underlying bonds and subcontracts.  Specifically, the Veltris contend that because Jef Graham, Developers' corporate designee, could not reference any documents which demonstrate that that Developers complied with its obligations, Developers claims should fail.  Developers maintains that, whether it acted "in compliance" with the underlying bonds or subcontracts is irrelevant to the Veltris' indemnity obligations.  Each Agreement is governed by a prima facie clause that establishes liability notwithstanding Developers' compliance with bonds and subcontracts.  As will be discussed more fully below, the Agreements themselves and the prevailing case law do not require any separate proof of compliance with underlying bonds or subcontracts. Therefore, the Veltris' argument fails.

The Veltris next argue that Developers cannot prove breaches of the 2009 and 2011 Agreements, because Developers has not produced the complete subcontracts upon which the Principals allegedly defaulted.  The Veltris also argue that, because Developers' witness

admitted that Developers did not know whether one of the Principals, Chrisellie, breached its subcontracts, Developers' breach of contract claims should fail.  Developers contends that it had no obligation to prove that any Principal, identified in the 2009 or 2011 Agreement, was liable for their underlying subcontract obligations.

Paragraph 2 of each Agreement contains prima facie provisions, which state in relevant part:

> 2. EXERCISE OF RIGHTS BY SURETY. In connection with the exercise of any of Surety's rights under this Agreement
>
> 2.1 Surety shall have the right in its sole and absolute discretion to determine whether any claims under a Bond shall be paid, compromised, defended, prosecuted or appealed.
>
>     ***
>
> 2.4 In any claim or suit hereunder, an itemized statement of claims or losses paid or liabilities incurred and expenses paid or incurred, declared under penalty of perjury to be true and correct by an officer of Surety, or the vouchers or other evidence of disbursement by Surety, shall be prima facie evidence of the fact and extent of liability hereunder of Principal and Indemnitor.
>
> 2.5 Surety shall have the right to reimbursement of its expenses and attorneys' fees incurred hereunder, irrespective of whether any Bond loss payment has been made by Surety. In any suit on this Agreement, Surety may recover its further  expenses and reasonable attorneys' fees incurred in such suit.

 (ECF No. 77-2 at ¶¶ 2.1, 2.4, and 2.5 and ECF No. 77-3 at ¶¶ 2.1, 2.4, and 2.5). A surety can stand upon its express contract and can enjoy considerable discretion to settle claims as long as payments were made in good faith. *See, supra. U.S. Fid. & Guar. Co. v. Feibus*, 15 F. Supp. 2d 579, 583 (M.D. Pa. 1998), aff'd, 185 F.3d 864 (3d Cir. 1999) (citations omitted). Sureties enjoy such considerable discretion in settling claims "because of the important function they serve in the construction industry," and that in light of this, other courts "have [ ] upheld a surety's right

to indemnification for claims paid to protect its own interests, as long as the payments were made in good faith." *Id*. at 585–86.

Here, the Veltris misstate the Developers' burden of proof. Paragraph 2 of each Agreement gave Developers the discretion to determine and make payment on any claims under a Bond. In addition, disbursement is prima facie evidence of a Principal's liability. Paragraph 2 does not require Developers to prove any breach of any underlying subcontract. Likewise, under the prevailing case law, because Developers, a surety, has considerable discretion in settling claims where a Principal has defaulted, the Veltris must prove that Developers' payments were fraudulent or made in bad faith. *Fallon Elec. Co. v. Cincinnati Ins. Co.*, 121 F.3d 125, 129 (3d Cir. 1997). In this regard, and as will be discussed below, the Veltris have produced no evidence or testimony to establish that any of Developers payments were fraudulent or made in bad faith. Therefore, the Veltris' defense fails. Developers has proven its performance to support its breach of contract claims.

As regards Developers' breach of contract claims at Counts I and II, Developers seeks judgment against the Defendants for damages in the amount of $1,953,372.97. The Veltris maintain that, even if Developers proves that they are liable, Developers cannot prove its claimed damages. The Veltris argue that Developers' records memorializing damages are missing or incomplete, that Developers' witnesses' testimony was not sufficient, and that Developers engaged in improper billing practices. The Veltris also argue that Developers acted in bad faith by billing work to the wrong bonds and by failing to properly apply credit for all payments Developers received for one of the bonds. (ECF No. 80-5 at pp. 60:18-62:16, 67:15-70:16). Further, the Veltris claim that Developers' designated damages witness, Jef Graham, failed to properly interpret invoices. *Id*. at pp 41:15-22, 45:23-46:7, 46:13-47:10, 59:11- 18, 60:4-12).

Developers responds that, it has met its burden of proof and has established its entitlement to

damages under each of the 2009 and 2011 Agreements.  Developers references the declaration of

Jef Graham with accompanying expense sheets in support of its damages.  (ECF Nos. 77-4, 77-5,

and 77-6).

The Agreements, through a prima facie clause, set forth Developers' burden as to liability

and damages as follows:

> 2.1   Surety shall have the right in its sole and absolute discretion to
>       determine whether any claims under a Bond shall be paid, compromised,
>       defended, prosecuted or appealed.
>
>       ***
>
> 2.4   In any claim or suit hereunder, an itemized statement of claims or losses
>       paid or liabilities incurred and expenses paid or incurred, declared under
>       penalty of perjury to be true and correct by an officer of Surety, or the
>       vouchers or other evidence of disbursement by Surety, shall be prima facie
>       evidence of the fact and extent of liability hereunder of Principal and
>       Indemnitor.

(ECF No. 77-2 at ¶¶ 2.1, and 2.4 and ECF No. 77-3 at ¶¶ 2.1, and 2.4).    Developers issued

surety bonds on eight (8) projects.  (ECF No. 35 at ¶ 22).   Between March 19, 2010, and August

30, 2011, the Defendants allegedly defaulted on their obligations.  *Id*. at  ¶¶ 23-123.  As a result,

Developers allegedly sustained out-of-pocket net losses in the amount of One-Million Nine

Hundred Fifty-Three Thousand Three Hundred Seventy-Two and 97/100 Dollars,

($1,953,372.97), excluding any recoverable attorney's fees, as determined to be due pursuant to

the terms of the Agreements.  *Id*.  at ¶ 125.  Paragraph 2.1 granted Developers discretion to settle

the defaulted obligations.  Further, pursuant to the prima facie clauses of the Agreements

(Paragraph 2.4), Jef Graham, an officer of the Developers, submitted a declaration in this case

including an itemized statement of claims and the losses disbursed. (ECF Nos. 77-4 and 77-5).

As referenced above, a surety can stand upon its express contract, and it enjoys considerable discretion to settle claims as long as payments were made in good faith. *See, supra. U.S. Fid. & Guar. Co. v. Feibus*, 15 F. Supp. 2d 579, 583 (M.D. Pa. 1998), aff'd, 185 F.3d 864 (3d Cir. 1999) (citations omitted).   In determining damages in the surety context, courts have found that affidavits and expense sheets are sufficient to support prima facie evidence of damages. *United States Fid. & Guar. Co. v. Bilt-Rite Contractors, Inc.*, No. 04-1505, 2005 U.S. Dist. LEXIS 9299, at *10 (E.D. Pa. May 16, 2005).   A "prima facie evidence" clause in an indemnity agreement shifts to the indemnitor the burden of proving fraud or bad faith and that the costs incurred were not recoverable. *Fallon Elec. Co. v. Cincinnati Ins. Co.*, 121 F.3d 125, 129 (3d Cir. 1997).   An indemnitor must satisfy the following elements in order to demonstrate that a surety acted in bad faith: 1) the surety lacked a reasonable basis for paying the claims; and 2) the surety knew or recklessly disregarded its lack of a reasonable basis for doing so. *Developers Sur. & Indem. Co. v. BLB Constr., Inc.*, 2008 U.S. Dist. LEXIS 67189, at *8 (W.D. Pa. Aug. 11, 2008) (citing *U.S. Fidelity & Guar. Co. v. Feibus*, 15 F. Supp.2d 579, 584 (M.D. Pa. 1998), *aff'd*, 185 F.3d 864 (3d Cir. 1999).   Bad faith can also be demonstrated by "a showing of recklessness or improper motive such as self-interest or ill will." *Feibus*, 15 F. Supp. 2d at 586 (citing *Polselli v. Nationwide Mut. Auto. Ins. Co.*, 23 F.3d 747, 751 (3d Cir. 1994)).   Thus, the Veltris and Crunys must prove bad faith in response to Developers' prima facie evidence.

Here, the Agreements provided that Developers had the discretion to determine whether any claims under a Bond were to be paid, and Developers' disbursement of payment is prima facie evidence of the Principals' liability and Developers' losses.   Paragraph 2 does not require proof of breach of the underlying subcontracts.   It only requires that Developers submit a declaration of the losses it sustained.   Developers provided that through Jef Graham's

Declaration.  (ECF Nos. 77-4 and 77-5).  Accordingly, in compliance with the Agreements, Developers has produced prima facie evidence of liability and damages against the Defendants. And, because Developers, as a surety, has considerable discretion in settling claims where a principal has defaulted, Defendants have the burden to prove Developers' payments were either fraudulent or made in bad faith.

To meet their burden, the Veltris offer testimony that Developers billed against the wrong bonds and that Developers' damages designee, Jef Graham, incorrectly interpreted invoices. However, the Veltris do not reference any evidence that such billing practice or invoice interpretation leads to the conclusion that Developers was not obligated to pay the claims on behalf of the Principals, or that the overall sums claimed to be due are incorrect.  Therefore, the evidence proffered by the Veltris does not establish that Developers was reckless or lacked a reasonable basis to pay the claims.  Moreover, the evidence does not establish any material question of fact as regards the Veltris' defense. As such, Developers have sufficiently proven liability and damages in this case.   Jef Graham's Declaration and supporting documentation supports Developers damages claims against the Defendants in the amount of $1,954,182.07. (ECF Nos. 77-4, 77-5, and 77-6).

As regards attorneys' fees, Developers submitted Jef Graham's declaration to establish that it incurred $60,439.46 in attorneys' fees and expenses. (ECF No. 77-4).  The Veltris argue that more supporting documentation is necessary to justify that said fees and expenses were reasonable and necessary.  In its Reply Brief, Developers acknowledges that it can submit affidavits and a brief hearing can be held as necessary.  The Agreements provide for the payment of attorneys' fees as follows.

2.5 Surety shall have the right to reimbursement of its expenses and attorneys' fees incurred hereunder, irrespective of whether any Bond loss payment has been

> made by Surety. In any suit on this Agreement, Surety may recover
> its further expenses and reasonable attorneys' fees incurred in such suit.

(ECF No. 77-2 and 77-3 at ¶¶ 1-2).  The Seventh Amendment does not guarantee a trial by jury to determine the amount of reasonable attorneys' fees.  *Younis Bros. & Co. v. Cigna Worldwide Ins. Co.*, 882 F. Supp. 1468, 1475 (E.D. Pa. 1994).[5]   Under Pennsylvania law, the standard for the award of attorneys' fees has been articulated as follows:

> What is a fair and reasonable fee is sometimes a delicate, and at times a difficult question. The facts and factors to be taken into consideration in determining the fee or compensation payable to an attorney include: the amount of work performed; the character of the services rendered; the difficulty of the problems involved; the importance of the litigation; the amount of money or value of the property in question; the degree of responsibility incurred; whether the fund involved was "created" by the attorney; the professional skill and standing of the attorney in his profession; the results he was able to obtain; the ability of the client to pay a reasonable fee for the services rendered; and, very importantly, the amount of money or the value of the property in question. A larger fee than usual is likewise frequently awarded when an attorney "creates" a fund.

*Carmen Enterprises, Inc. v. Murpenter, LLC*, 2018 PA Super 97, 185 A.3d 380, 389–90 (2018), reargument denied (July 3, 2018), appeal denied, 650 Pa. 671, 201 A.3d 725 (2019).

At this stage, the parties have not developed a sufficient record to support the reasonableness of Developers' attorneys' fees.  Developers' concedes the same in its Reply Brief.  Therefore, questions of fact remain as to the reasonableness of Developers' attorneys'

---

[5] The Third Circuit has not established a constitutional right to a jury determination on the amount of attorneys' fees and costs to which a prevailing party is contractually entitled after judgment on liability for a breach of contract.  Other appellate courts have consistently held that the determination of the appropriate amount of attorneys' fees does not demand a jury trial. *See, e.g., E. Trading Co. v. Refco, Inc.*, 229 F.3d 617, 627 (7th Cir. 2000); *McGuire v. Russell Miller, Inc.*, 1 F.3d 1306, 1313 (2d Cir. 1993); *see also, e.g., Younis Bros. & Co., Inc. v. Cigna Worldwide Ins. Co.*, 882 F. Supp. 1468, 1475 (E.D. Pa. 1994).  In *Eastern Trading Company* the Seventh Circuit concluded that where a contract between the parties obligated one to reimburse the other for any attorneys' fees incurred in collecting certain debts, the issues of entitlement to attorneys' fees and the amount of attorneys' fees were not triable issues and did not need to be submitted to the jury. 229 F.3d at 626-27.

fees claim. Accordingly, the Court will defer any award of attorneys' fees pending further motion by Developers and a hearing to develop the record.

Under the terms of the Agreement, Developers has met its burden to prove that Defendants are liable under the 2009 and 2011 Agreements and that Developers is entitled to damages in the amount of $1,954,182.07. As such, the Developers' Motion for Summary Judgment will be granted against all Defendants at Counts I and II in the amount of $1,954,182.07. Developers Motion for Summary Judgment as to its claims for attorneys' fees will denied without prejudice. Veltris' Motion for Summary Judgment against Developers will be denied.

### b. Veltris's Motion for Summary Judgment against the Crunys

The Veltris move for summary judgment on their Cross-Claim for breach of contract/contractual indemnification against the Crunys. (ECF No. 81). The Veltris argue that, under the Stock Purchase Agreement (SPA), the Crunys must indemnify the Veltris for any liability determined to be due to Developers in this case. In response, the Crunys contend that the SPA indemnification provisions do not apply here, because the principals named in the 2009 and 2011 Agreements did not obtain "credit" from Developers. The Crunys also contend that neither they nor the Veltris can be solely liable to Developers for any breach of the 2009 and 2011 Agreements. The Crunys argue that the Veltris, as Indemnitors under the 2009 and 2011 Agreements, cannot escape liability to Developers because Developers was not a party to the SPA. The Crunys also contend that the SPA has not otherwise released the Veltris from their obligations under the 2009 and/or 2011 Agreement. Finally, the Crunys argue that Michael Cruny was not a party to the SPA; and thus, he cannot be liable for indemnity to the Veltris.

Indemnification serves as a method for fault shifting to a third party, where the party legally obligated to pay damages caused by another is without fault, but for its legal status. *Unique Techs., Inc. v. Micro Stamping Corp.*, No. CIV.A. 02-CV-6649, 2003 WL 21652284, at *2 (E.D. Pa. Apr. 15, 2003) (citing *Builders Supply Co. v. McCabe*, 366 Pa. 322, 328, 77 A.2d 368, 371 (1951). "Indemnity agreements are to be narrowly interpreted in light of the parties' intentions as evidenced by the entire contract." *Consolidated Rail Corp. v. Delaware River Port. Auth.*, 880 A.2d 628, 632 (Pa.Super. Ct. 2005), appeal denied, 587 Pa. 714, 898 A.2d 1071 (2006). "In interpreting the scope of an indemnity clause, the court must consider the four corners of the document and its surrounding circumstances." *Widmer Engineering v. Dufalla*, 837 A.2d 459, 472 (Pa.Super. Ct. 2003), appeal denied, 837 A.2d 459 (2003).

As set forth above, the Stock Purchase Agreement states in relevant part:

> **4.2 Indemnification Provisions for [Eloise Veltri's] Benefit.** From and after the Closing Date, [Christine Cruny]will indemnify and hold [Eloise Veltri and her husband, Victor Veltri] harmless (and with respect to <u>Section 4.2(c)</u> and <u>Section 4.2(d)</u> the [Iron City Constructors, Inc.] will indemnify and hold[Eloise Veltri and her husband, Victor Veltri] harmless) from and pay any and all Damages (except for consequential, special or incidental Damages) to which the [Eloise Veltri and her husband, Victor Veltri] become subject as a result of, arising out of or attributable to, any one of the following:
>
> ***
>
> (d)   Any personal guarantees that [Eloise Veltri] and/or her husband, Victor Veltri, issued in order to allow the Company to obtain credit from a third party.

(ECF No. 38-1 at § 4.2).

The Crunys argue that Michael Cruny was not a party to the SPA; and thus, he cannot be liable for indemnity to the Veltris. Michael Cruny, as President of Iron City Constructors, Inc., signed the SPA as to Sections 4.2(c) and 4.2(d) only. *Id.* at p. 13. The SPA contains no indication that Michael Cruny signed the SPA in his individual capacity. The record contains no

evidence of any intent for Michael Cruny to have assumed any personal liability to indemnify the Veltris by virtue of the SPA.  As such, there is no basis to impose liability upon Mr. Cruny to indemnify the Veltris. Therefore, based upon the record before the court, the Veltris' Motion for Summary Judgment on their Cross-Claim against Michael Cruny, individually, will be denied.

As regards Mrs. Cruny, Section 4.2(d) of the Stock Purchase Agreement obligates her to indemnify the Veltris for any Veltri liability arising from personal guarantees given by the Veltris to Developers.  The Crunys' argument, that the 2009 and 2011 Agreements did not involve credit, lacks merit. Courts treat surety bonds, such as those issued by Developers in this case, as "a financial credit product."  *Reginella Constr. Co., Ltd. v. Travelers Cas. & Sur. Co. of Am.*, 949 F. Supp.2d 599, 612 (W.D. Pa. 2013); *United States ex. rel. SimplexGrinnell, LP v. Aegis Ins. Co.*, 2009 U.S. Dist. LEXIS 2381, *9 (M.D. Pa. 2009) (quoting Philip L. Bruner & Patrick J. O'Connor, Jr., 4 *Bruner & O'Connor on Construction Law* § 12:7 (2003)).  Thus, the surety bonds, referenced in the 2009 and 2011 Agreements, were "to obtain credit" in the form of surety bonds from Developers.  Therefore, Section 4.2(d) of the SPA applies to provide for indemnification to the Veltris.

Mrs. Cruny's argument, that she cannot be solely liable to Developers for any breach of the 2009 and 2011 Agreements, is unavailing.   Indemnity agreements are designed to shift liability and not relieve liability. Any of the respective parties to the 2009 and 2011 Agreements can be liable to Developers as evidenced by Paragraph 14.1of the Agreements which states, "[t]he obligations of Principal and Indemnitor hereunder are joint and several.  Surety may bring separate suits hereunder against any or all of the undersigned as causes of action may accrue hereunder."  (ECF No. 77-2 at ¶ 14.1 and 77-3 at ¶ 14.1).    However, any of those parties (i.e. Veltris as indemnitees) were free to contract with a third party (i.e.  Mrs. Cruny as indemnitor) to

shift responsibility for payment to Mrs. Cruny.  The SPA does not affect the Veltris' underlying liability obligation to Developers.  The SPA created a valid and enforceable indemnity agreement for which Mrs. Cruny must indemnify the Veltris.

Further, Mrs. Cruny challenges her indemnity liability to Veltris because Developers was not a party to the SPA and because the SPA did not release the Veltris from liability to Developers.  Developers' non-involvement in the SPA is irrelevant to the indemnity obligations between Mrs. Cruny and the Veltris.  The pertinent portions of the SPA are issues of indemnity. A contract of indemnity is a separate undertaking of the indemnitor and indemnitee. *See* 16 Summ. Pa. Jur. 2d Commercial Law § 7:44 (2d ed.) (citing *Reiff v. Brodsky*, 33 Pa. D. & C.2d 49, 1964 WL 6265 (C.P. 1964).  The indemnity provisions within the SPA did not require Developers to be a party, because the SPA does not affect the Veltris underlying obligations to Developers. The Veltris are not released from their liability to Developers.  Release is not related to the SPA indemnity agreement, as the SPA only imposed the duty for Mrs. Cruny to indemnify the Veltris. Thus, Mrs. Cruny's argument, concerning the necessity for the Veltris' release from the 2009 and 2011 Agreements and for Developers to be a party to the SPA, fails.  The Crunys have not produced evidence to establish any question of material fact in defense of Mrs. Cruny's indemnity obligations to the Veltris under the SPA.

Accordingly, the Veltris's Motion for Summary Judgment on their Cross-Claim against the Crunys will be granted as to Christine Cruny.  Under the terms of the SPA, Christine Cruny will be obligated to indemnify and hold harmless Victor and Eloise Veltri for any contract indemnity damages to which the Veltris may be obligated to pay to Developers.[6]

---

[6] *See Crestar Mortgage Corp. v. Peoples Mortgage Co., Inc.*, 818 F.Supp. 816, 821 n. 4 (E.D.Pa.1993) (claim on a contract of indemnity accrues when liability is established).

IV.     Conclusion

Following consideration of the foregoing, Developers' Motion for Summary Judgment will be granted against Defendants in the amount of $1,954,182.07.  Developers' Motion for Summary Judgment for reasonable attorneys' fees will be denied, without prejudice.  Developers may file a separate request for determination of reasonable attorneys' fees within ten (10) days.

As per Developers' stipulation to the dismissal of its Count III, Unjust Enrichment Claim, Count III will be dismissed.

The Veltris' Motion for Summary Judgment against Developers will be denied.

The Veltris Motion for Summary Judgment on their Cross-claim against the Crunys will be granted in part and denied in part.  The Motion will be denied as to the Veltris' Cross-claim against Michael Cruny, individually.  The Motion will be granted as to the Veltris' Cross-claim against Christine Cruny.  Christine Cruny shall indemnify the judgment entered against the Veltris in this case.

An appropriate order will follow.


BY THE COURT:

DATED:  October 28, 2020


MARILYN J. HORAN
United States District Judge